[No. 20175.   Department Two.   December 2, 1926.]

## THE STATE OF WASHINGTON, *Respondent*, v. DEWEY DONOFRIO, *Appellant*.[1]

[1] ASSAULT (8)—PROSECUTION—INFORMATION—SUFFICIENCY. An information for assault naming the person "wilfully" assaulted is a sufficient compliance with Rem. Comp. Stat., § 2414, subdiv. 4, defining second degree assault upon "another."

[2] CRIMINAL LAW (297)—INSTRUCTIONS—GRADE OR DEGREE OF OFFENSE. Upon a charge of second degree assault, it is the duty of the court to submit to the jury the question of third degree assault where the evidence is such as to warrant the jury in believing the accused guilty only of the lower degree.

[3] SAME (297). Upon a charge of second degree assault by striking another in the face with an iron instrument in such manner as to produce bodily harm, the evidence would warrant the jury in finding accused guilty only of third degree assault, making it error to refuse to submit that issue, where the testimony left it doubtful whether the prosecuting witness was struck with an instrument or with accused's bare fist or hand.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered October 31, 1925, upon a trial and conviction of assault. Reversed.

*S. A. Gagliardi*, for appellant.

*J. W. Selden, John E. Belcher*, and *Robert B. Abel*, for respondent.

PARKER, J.—The defendant, Donofrio, was charged by information, filed in the superior court for Pierce county, with the crime of assault in the second degree, as follows:

"That the said Dewey Donofrio in the county of Pierce, in the state of Washington, on or about the 26th day of May, 1925, then and there being, unlawfully and feloniously and under circumstances not amounting to assault in the first degree, did wilfully assault Elsie

[1]Reported in 250 Pac. 951.

Engdahl with a weapon or instrument likely to produce bodily harm, the exact nature or character of said instrument being unknown to the prosecuting attorney other than an iron instrument being then and there held in the hands of said Dewey Donofrio, and that the said Dewey Donofrio did then and there strike the said Elsie Engdahl in the face with said instrument in such a manner as to produce bodily harm.''

His trial in that court resulted in a verdict of a jury finding him guilty of assault in the second degree, upon which judgment of imprisonment was accordingly rendered against him. From his conviction so had, he has appealed to this court.

Contention is made, in behalf of appellant, that the evidence does not support the verdict and judgment rendered against him, and that the trial court should have so decided as a matter of law; the evidence having been timely challenged by appropriate motions in that behalf. A careful review of the evidence convinces us that we would not be warranted in disturbing the judgment upon this ground.

[1] It is next contended, in behalf of appellant, that the information ''does not state facts sufficient to charge a crime against this defendant,'' and that the trial court erred in refusing to sustain such challenge to the sufficiency of the information, timely made by demurrer and motion. The argument is that the charge that appellant ''did wilfully assault Elsie Engdahl'' is insufficient, in that it does not follow the language of the statute defining the crime, which is, ''wilfully assault another.'' Rem. Comp. Stat., § 2414, subd. 4 [P. C. § 8759]. It is insisted that the use in the information of the name ''Elsie Engdahl,'' as a designation of the one assaulted, does not certainly designate another person, since that might be the name or designation of a domestic animal alleged to have been assaulted. In Rem. Comp. Stat., § 2055 [P. C.

§ 9268], requisites of an information, touching its charging language, is prescribed as:

"A statement of the acts constituting the offense, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

It seems plain to us that a person of common understanding would, from the language used in this information, know that the name "Elsie Engdahl" was intended to be used as designating "another" person. We conclude that the charge is sufficiently specific in this particular.

[2] It is further contended, in behalf of appellant, that the trial court erred to his prejudice in not submitting to the jury the question of his guilt of assault in the third degree, as well as the question of his guilt of assault in the second degree, which was alone submitted to the jury. The three degrees of assault defined by our criminal statutes, referring to the sections of Remington's Compiled Statutes, in so far as we need here notice them, are as follows:

"§ 2413. Every person who, with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another—

"(1.) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; or . . . shall be guilty of assault in the first degree and shall be punished by imprisonment in the state penitentiary for not less than five years.

"§ 2414. Every person who, under circumstances not amounting to assault in the first degree— . . .

"(4.) Shall willfully assault another with a weapon or other instrument or thing likely to produce bodily harm; or . . .

"Shall be guilty of assault in the second degree and be punished by imprisonment in the state penitentiary for not more than ten years or by a fine of not more than one thousand dollars, or by both.

"§ 2415. Every person who shall commit an assault or an assault and battery not amounting to assault in either the first or second degrees, shall be guilty of assault in the third degree, and shall be punished as for a gross misdemeanor."

The punishment prescribed for the commission of a gross misdemeanor is "imprisonment in the county jail for not more than one year, or by a fine of not more than one thousand dollars, or by both." Rem. Comp. Stat., § 2267.

It is plain, we think, that this charge of assault in the second degree includes a charge of assault in the third degree. This, as we understand counsel for the prosecution, is conceded; but they argue that the evidence precludes the possibility of appellant being guilty of assault in the third degree; that is, that the evidence necessarily calls for the conclusion, that he is guilty of assault in the second degree or not guilty at all. It is true, the court has often held that, in order to convict one of a lesser degree of a charged crime, or to call for the submission to the jury of a lesser degree of a charged crime, the evidence must be such as to warrant such conviction Counsel for the prosecution cite, as showing this view of the law as being repeatedly entertained by this court, the following: *State v. Kruger,* 60 Wash. 542, 111 Pac. 769; *State v. McConaghy,* 84 Wash. 168, 146 Pac. 396; *State v. Reynolds,* 94 Wash. 270, 162 Pac. 358; *State v. Gottstein,* 111 Wash. 600, 191 Pac. 766; *State v. Shaffer,* 120 Wash. 345, 207 Pac. 229.

In each of those cases, the evidence conclusively showed the commission of the higher degree of the crime charged, or that no crime at all was committed; and hence it was held proper, in each of those cases, for the court not to submit to the jury the question of whether or not the defendant was guilty of the

lower degree. On the other hand, this court has repeatedly held that, where the evidence is such as to warrant the jury in believing the accused guilty only of a lower degree of the offense with which he is charged, it is the duty of the court to submit to the jury the question of the guilt or innocence of the accused of the lower degree, as well as the question of his guilt or innocence of the higher degree. *State v. Dolan,* 17 Wash. 499, 50 Pac. 472; *State v. Young,* 22 Wash. 273, 60 Pac. 650; *State v. Dengel,* 24 Wash. 49, 63 Pac. 1104; *State v. Dale,* 110 Wash. 181, 188 Pac. 473; *State v. Olsen,* 135 Wash. 240, 237 Pac. 502.

[3] We now inquire as to whether or not there was evidence in this case warranting the jury in finding appellant guilty only of assault in the third degree. The prosecuting witness, Miss Engdahl, was the only person present at the time of the alleged assault, other than appellant; hence she was the only witness who testified directly against appellant as to what occurred at that time. According to her testimony, she was walking northerly along the left or westerly sidewalk of Adams street, in Tacoma, when appellant, driving an automobile, came up near, and possibly a little ahead of, her, and getting out of his automobile, made the assault, as related by her. She testified as to what then occurred as follows:

"Q. What occurred there? A. When he got up to me he stopped his engine and he says 'Hold up your hands,' and when I didn't pay any attention to him at all he got out; and he got out the lefthand side of the car and stopped me, and then he says, 'Hold up your hands,' and I held up my hands, but he didn't take my purse; and then he says, 'Get into that car or I will shoot you,' and I screamed; and he says, 'Get into that car, and don't you holler, or I'll shoot you;' and then when I screamed, he hit me over the head. Q. Were you rendered unconscious? A. No. Q.

Now just tell the jury where he struck you? A. Well he struck me on my forehead, right above my eye here (indicating), and he knocked my hat off; and my eye swelled right away, and then both my eyes were blacked for quite a time afterwards. Q. Now, Miss Engdahl, how close did your assailant come to you? A. Oh, I was right close to him—well, just about six inches. Q. Just describe what it was he struck you with? A. It was something dark—he held it right here (indicating). Q. You mean, in his vest pocket? A. He held it right against his coat here. Q. Was it in the nature of a blunt instrument? A. Yes. Q. Did he take anything away from you? A. No. Q. He was about six inches away from you? A. Yes, just about—close to me. Q. Did you see stars? A. Yes. Q. It kind of blinded you? A. No; it didn't blind me. Q. And after he struck you he immediately proceeded in the automobile and departed? A. Yes; he walked slowly over to the automobile and started his engine. Q. Now what kind of instrument was it, was it a revolver? A. I don't know—I cannot say. Q. Was it a stick? A. No. Q. Did you fall unconscious after he struck you? A. No. Q. It kind of stunned you? A. No; it didn't stun me, because I was able to walk home perfectly; I didn't even fall on my knees. Q. And it didn't affect your vision or your mind at all? A. No."

Photographs of Miss Engdahl taken two days later, introduced in evidence by the state, show her as having one eye considerably, and the other slightly, blackened as if by a blow, which the jury could well have believed was a blow by a bare fist or hand. It was dark at the time of the alleged assault, and the jury might well have believed that Miss Engdahl did not see any weapon or instrument in the hand of the accused likely to produce bodily harm, but that he struck her with his bare fist or hand, and thus believe that the assault upon her was no more serious than that of assault in the third degree, had the court submitted that question to

the jury. He denied making any assault upon Miss Engdahl, and denied being present upon the occasion of the alleged assault. Her identification of him was not very satisfactory. She was not injured to the extent of being kept away from, or losing any time from, her regular employment. We are of the opinion that the evidence was ample to warrant the jury in believing that any assault made by appellant upon Miss Engdahl, as claimed by her, was such as to render him guilty only of assault in the third degree, and that, had the trial court submitted that question to the jury, they might have so found. The failure of the trial court in this respect we think, entitles appellant to a new trial.

Some other claims of error are made in behalf of appellant, touching the rulings of the trial court upon the admission and exclusion of evidence. The record is not very clear, touching these contentions. We think that we need not notice them here, being of the opinion that they will not likely arise upon a new trial, especially in the manner as disclosed by this not very clear record.

The judgment is reversed, and the cause remanded to the superior court with directions to award the appellant a new trial.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and ASKREN, JJ., concur.